812 F.2d 1235
 106 Lab.Cas. P 12,279
 LOCAL 186, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA,
Plaintiff/Appellant,
v.
William E. BROCK, Undersecretary of Labor, Edwin Meese, III
and Robert Bonner, Defendants/Appellees.
 No. 85-6190.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 2, 1986.
Decided March 18, 1987.
 
 Ronald Rosenberg, Washington, D.C., for plaintiff-appellant.
 John F. Cordes, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before TANG, FARRIS and POOLE, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 Local 186 challenges the constitutionality of Sec. 504 of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), as amended, 29 U.S.C. Sec. 504. The Act, as originally adopted, disqualifies persons who have been convicted of committing certain crimes from employment in a labor organization. Amendments enacted in 1984 require immediate disqualification upon conviction regardless of appeal and direct that any salary accruing during the appeal period be placed in escrow by the union.
 
 I. FACTS
 
 2
 On August 13, 1982, Martin Fry, then secretary-treasurer of Local 186, was convicted of arson in violation of the Racketeer Influenced Corrupt Organizations Act (RICO), 18 U.S.C. Sec. 1962(d) and related crimes. On October 25, 1982, the court sentenced him to 30 months in prison on the RICO violation and granted a suspended sentence on the other charges. We affirmed the convictions in a memorandum opinion filed on March 20, 1985. Fry did not petition the Supreme Court for a writ of certiorari.
 
 
 3
 On October 12, 1984, the President signed the Comprehensive Crime Control Act of 1984, Pub.L. No. 93-473, 98 Stat. 2133-34 amending Sec. 504 of LMRDA.[1] Included in these amendments were the provisions for immediate disqualification and escrow of salary. Because Martin Fry's convictions were pending appeal on this date, he was subject to these provisions.[2] The executive board of Local 186 declared the office of secretary-treasurer vacant and no salary was ever placed in escrow. The union says that Fry intends to seek work at Local 186 immediately upon completion of his prison sentence unless he is prevented from doing so by Sec. 504. The union also asserts that there is a substantial possibility that one or more of its members or employees have been or will be convicted of a disqualifying offense. Local 186 offers no facts such as names and numbers of persons who will be disqualified, positions subject to disqualification, or types of crimes involved to substantiate this assertion.
 
 
 4
 On March 14, 1985, four days before this court affirmed Fry's conviction, Local 186 brought suit seeking a declaratory judgment that Sec. 504, as amended, is unconstitutional. The complaint alleges that the immediate disqualification provision is unconstitutional as an ex post facto law because it imposes an increased punishment on Martin Fry and denies due process by arbitrarily burdening Martin Fry's right of appeal. It alleges that the provision disqualifying convicted felons from union office violates the equal protection clause. It alleges that Sec. 504 fixes punishment by a non-judicial authority and thus constitutes a bill of attainder. Finally, it alleges that the new escrow provision deprives Local 186 of its property without due process of law in violation of the Fifth Amendment.
 
 
 5
 The district court denied Local 186's motion to amend its complaint to add allegations concerning freedom of association, freedom of contract, right of private employment, and a claim for damages against the Attorney General and the U.S. Attorney personally.
 
 
 6
 The district court granted the Secretary's motion for summary judgment. In its Findings and Conclusions, the court held that Local 186 lacked standing to assert the legal interests of Martin Fry, that any challenge to Martin Fry's immediate disqualification was mooted by the appellate decision sustaining his conviction, and that the challenge to the escrow provision was not a live claim of injury. It also upheld Sec. 504 against all Local 186 constitutional challenges, including the first amendment challenge not raised in the original complaint. We affirm.
 
 II. DISCUSSION
 A. Standing
 
 7
 This court reviews the district court's grant of summary judgment de novo. Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986).
 
 
 8
 Standing requires justiciability: whether the plaintiff has made out a "case or controversy" within the meaning of Article III. Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). The plaintiff can invoke federal jurisdiction only when the plaintiff himself has suffered some threatened or actual injury. Id. at 499, 95 S.Ct. at 2205. Here, the standing issue is murky because the union alleges specific injury to Martin Fry in its complaint but in its proposed amended complaint (which the district court did not grant leave to file) and its brief before this court, it does not mention Fry by name and instead argues actual and potential injury to the union and union membership.
 
 
 9
 Freedom of association encompasses the right of union members to select their representatives. Brotherhood of Railroad Trainmen v. Virginia State Bar, 377 U.S. 1, 6, 84 S.Ct. 1113, 1116, 12 L.Ed.2d 89 (1964). Local 186 does not allege nor does it argue on appeal that its members somehow are injured because Sec. 504 deprives them of the services of Martin Fry. Instead, it contends that Sec. 504 impermissibly burdens freedom of association and equal protection principles because it is overinclusive and underinclusive. First National Bank of Boston v. Bellotti, 435 U.S. 765, 792-95, 98 S.Ct. 1407, 1424-26, 55 L.Ed.2d 707 (1978). In support of this contention, it argues that the statute bars those with narcotics convictions even if the offense is minor and unrelated to union activity; on the other hand, serious crimes such as perjury and kidnapping are not enumerated in Sec. 504. Therefore, Local 186 reasons, the statute will disqualify a file clerk with a single narcotics offense while sparing a union president with ten convictions for perjury or kidnapping. Furthermore, Local 186 argues that the statute offends equal protection and due process guarantees because it is irrational. F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415-16, 40 S.Ct. 560, 561-62, 64 L.Ed. 989 (1920). According to the union, the statute could treat two individuals convicted of the same crime differently. For example, a person found guilty of committing a state narcotics violation would be stripped of his job, while one found guilty of an identical federal offense would go untouched.[3]
 
 
 10
 Except as the statute applies to Martin Fry, Local 186 has failed to meet the threshold requirement of standing. It has not alleged a justiciable case or controversy. Warth, 422 U.S. at 498-99, 95 S.Ct. at 2204-05. Although Local 186's hypotheticals may be plausible, they are hypotheticals and not actual cases. There is no showing that its members are injured by the temporary deprivation of Martin Fry's services.[4] Local 186 has not presented us with a case involving the disqualification of a minor employee for an unrelated drug conviction nor a case of unequal treatment arising from the different penalties imposed by state and federal narcotics laws. Rather, Local 186 has made a broad attack on Sec. 504 alleging potential injury bottomed upon abstract hypotheticals. We will not rule on abstract questions even of wide public significance. Valley Forge College v. Americans United for Separation of Church and State, 454 U.S. 464, 475, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982); Darring v. Kincheloe, 783 F.2d 874 (9th Cir.1986); McMichael v. County of Napa, 709 F.2d 1268, 1271 (9th Cir.1983).
 
 
 11
 Local 186 relies heavily on the recent case UAW v. Brock, --- U.S. ----, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986), in which the Supreme Court applied the Hunt test for associational standing. Under the test articulated in Hunt v. Washington Apple Advertising Commission, an association has standing to bring suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit." 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). UAW v. Brock does not help Local 186. In that case, it was undisputed that a large number of UAW members were denied trade readjustment allowance benefits. 106 S.Ct. at 2529. Here, Local 186 does not present a case wherein Sec. 504 has injured any of its members in any tangible way and the statute has barred only one employee, Martin Fry, from union employment.
 
 
 12
 The union also lacks standing to assert the interests of Martin Fry. Applying the Hunt test, Martin Fry would have standing to challenge the statute in his own right. However, Local 186 cannot meet the second prong of the test. The asserted right of a convicted felon to serve in union employment is not an interest germane to the union's purpose. Cf. UAW v. Brock, 106 S.Ct. at 2531; Hunt, 432 U.S. at 344, 97 S.Ct. at 2441; Olagues v. Russoniello, 797 F.2d 1511, 1519 (9th Cir.1986). Because this challenge fails to meet the second requirement for associational standing, we need not consider the third requirement.
 
 B. The Immediate Disqualification Amendment
 
 13
 Local 186 attacks the immediate disqualification provision as a bill of attainder, an ex post facto law, and an unconstitutional burden on the right of appeal. The case before us is Martin Fry's disqualification. No other union employee has been disqualified. A moot action is one where the issues are no longer alive or the parties lack a legally cognizable interest in the outcome. Sample v. Johnson, 771 F.2d 1335, 1338 (9th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1206, 89 L.Ed.2d 319 (1986). The challenge to Martin Fry's disqualification pending his appeal is moot because his conviction was affirmed on appeal. See Golden v. Zwickler, 394 U.S. 103, 108-10, 89 S.Ct. 956, 959-61, 22 L.Ed.2d 113 (1969).
 
 
 14
 Local 186 argues that Fry's disqualification comes within the "capable of repetition but evading review" exception to the mootness doctrine. This exception applies when (1) the challenged action is of limited duration, too short to be litigated fully prior to its cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again. Wiggins v. Rushen, 760 F.2d 1009, 1011 (9th Cir.1985). The exception does not apply here. Martin Fry's appeal lasted almost three years, time enough for the proper parties to litigate fully the validity of the immediate disqualification provision.
 
 C. The Escrow Amendment
 
 15
 The escrow amendment requires that, upon conviction, the union place in escrow any salary "which would be otherwise due." 29 U.S.C. Sec. 504(d). If the union official is ultimately acquitted, he will receive the salary with interest. If his conviction is affirmed, the money will revert to the union with interest. Local 186 argues that this provision is a taking without due process in violation of the fifth amendment because it would deprive it of the use of its money during the appeal period.
 
 
 16
 An issue is not ripe for decision if the challenge is based solely on speculative injury. Pacificorp v. F.E.R.C., 795 F.2d 816, 825 (9th Cir.1986). The challenge to the escrow amendment lacks ripeness because Local 186 has never escrowed any salary under Sec. 504.
 
 
 17
 For these reasons the judgment of the district court is
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 The 1984 amendments change the statute as follows: 1) They add to the list of enumerated crimes, attempts to commit the previously listed crimes, and felonies involving abuse of union positions; 2) add five additional positions for which conviction will disqualify a person including purely clerical and custodial employees; 3) increase the maximum disability period from five to thirteen years following conviction or end of imprisonment, whichever is later; 4) introduce a third method of obtaining release from disability: petition to the sentencing court for reduction of the disability period to as little as three years (the others are pardon and exemption by parole board); 5) increase the penalty for violation of Sec. 504 to a felony; 6) provide for immediate disqualification regardless of pending appeal; and 7) require that any salary otherwise due during the appeal period be placed in escrow by the union
 
 
 [2]
 The 1984 amendments have three effective dates: 1) Persons whose convictions were affirmed before enactment of the 1984 amendments are subject only to the provisions of the original 1959 Act. 2) Persons convicted prior to the 1984 amendments but whose appeals were pending are subject only to the immediate disability and escrow provisions. The affected positions and disqualifying crimes remain those of the 1959 Act, the maximum disability is still five years, and the penalty for violation is still a misdemeanor. 3) Persons convicted after enactment are subject to all 1984 amendments
 
 
 [3]
 This is because 21 U.S.C. Sec. 1244 provides that a person found guilty of a first time federal narcotics offense may be freed from all disqualifications and penalties imposed by law. On the other hand, a state may lack a parallel provision affording relief from a state narcotics violation
 
 
 [4]
 Nor could Local 186 succeed with such an assertion. In the labor-management context, we have indicated that the test for first amendment violations requires a balancing of the interests served by the restriction on associational freedom and by the absence of restriction. NLRB v. Associated General Contractors, 633 F.2d 766, 772 n. 9 (9th Cir.1980), cert. denied, 452 U.S. 915, 101 S.Ct. 3049, 69 L.Ed.2d 418 (1981) (citing NLRB v. Gissel Packing Co., 395 U.S. 575, 617, 89 S.Ct. 1918, 1941, 23 L.Ed.2d 547 (1969)). The Supreme Court has implicitly held that Sec. 504 does not impermissibly infringe union members' freedom of association. See Brown v. Hotel & Restaurant Employees Union, 468 U.S. 491, 505, 104 S.Ct. 3179, 3188, 82 L.Ed.2d 373 (1984) ("By enacting Sec. 504(a), Congress has unmistakably indicated that the right of employees to select the officers of their bargaining representatives is not absolute and necessarily admits of some exception."); De Veau v. Braisted, 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960) (upholding an analogous New York statute against a due process challenge and citing Sec. 504(a) with approval). Here, the temporary deprivation of the services of one union leader who has been convicted of racketeering and arson does not constitute a significant infringement of Local 186's freedom of association. On the contrary, disqualification of one who has been convicted of such crimes seems to fit a legitimate legislative goal, curbing corruption in labor affairs